## BRUCE *v*. DAVENPORT.

September, 1867.

Reversing 36 *Barb*. 349.

One who proposes to disaffirm a contract on the ground of fraud, which induced him to enter into it, must do so at once, upon the discovery of the fraud.*

The defendants, who were partners, employed the plaintiffs, as brokers, to sell a note which defendants held, at a discount, without their indorsement and without recourse; but by making false statements to one of the partners, and by concealing the instructions given by the other partner, plaintiffs obtained the indorsement of the firm name on the note.—*Held*, that if the representation to one partner of what his associate would do if present, be deemed sufficient ground, within the rule respecting fraud, to avoid the contract, the defendants could not take advantage of it after having received and retained the proceeds of the note, and been silent for nearly three months, until the insolvency of the maker occurred. They should, at once, when the real facts were made known to all of them, have tendered the plaintiffs the money received, and demanded a return of the note.

* Compare King *v*. Fitch, in this series.

On reversing a judgment for error, and ordering a new trial, the court are not authorized to make it a condition that testimony already taken may be read in evidence upon the new trial. The new trial being a matter of right, the party is entitled to it without qualification,

John M. Bruce, William A. Odell, and David M. Farnum, sued James S. Davenport, Samuel W. Davenport, and Thomas Davenport, in the supreme court, as indorsers of a promissory note. The defense was that the indorsement of the defendants was procured by fraud.

The referee found the following facts. The defendants were merchants under the firm of Davenport Brothers. One of their number, Thomas, delivered the note in question (which was made by "Beale, Mellick & De Witt," and was dorsed by the makers in blank) to the plaintiffs, who were note brokers, with directions to sell it without the indorsement of defendants, and at a discount not exceeding twelve per cent. The defendants had previously, through Thomas Davenport, who attended exclusively to this business, employed plaintiffs to sell similar notes without recourse.

A few days after the note in suit was delivered to plaintiffs, Odell, one of the plaintiffs, called at the defendants' place of business. Thomas Davenport was then absent. Odell found the defendant James S. Davenport there, and requested him to indorse this note in the name of the defendants' firm. J. S. Davenport at first declined doing so, saying that Thomas Davenport attended to this part of the business, and that he knew nothing about it. Odell then stated to him that Thomas Davenport was in the habit of indorsing the name of his firm on the paper of those makers; that he invariably did so; that he would indorse this note if he were at home, and that if J. S. Davenport indorsed it, he would find it all right when Thomas Davenport returned; that the plaintiffs could sell the note if the defendants indorsed it, but not otherwise. The defendant, James S., induced by these statements of Odell, then indorsed the note in the name of the firm. After thus obtaining the defendants' indorsement, plaintiffs indorsed the note, and sold it at seven per cent. discount. They reported the sale to defendants as a sale at twelve per cent. discount, and reserved that rate of percentage from the proceeds.

The note not being paid by the makers at maturity, plaintiffs paid it, and brought this action against defendants as indorsers.

A day or two after James S. indorsed the note in Thomas' absence, Thomas returned, and on being informed by James S. of the representations and of the indorsement, expressed his dissatisfaction, and said he would not have indorsed it for five hundred dollars; and James S. expressed indignation at having been induced to indorse the notes by said statements.

The defendants did not express dissatisfaction to the plaintiffs as to the means by which the indorsement was obtained, till it was ascertained that the makers were insolvent.

The referee was of opinion that Odell's statements were not such false representations as would invalidate the indorsement obtained by them; because, 1, so far as they related to what Thomas would do if at home, they were promissory, asserting no existing fact, and, 2, the statement that he had indorsed such notes, was not "material," since it averred nothing as to the credit, &c., of the makers, nor was it a statement that a prudent member of a mercantile firm, having their own books, would rely on, nor, 3, did the representations cause loss, for it did not appear that the note would have been negotiated at all, without indorsement. He therefore gave judgment for plaintiffs on the note, less the excess of discount.

*The supreme court* held that plaintiffs had violated their instructions, in selling with an indorsement; and that an indorsement obtained by such means could not be deemed a modification of the instructions. They accordingly reversed the judgment awarded by the referee. They directed that on a new trial " the proof taken on the former trial of this action before said referee stand as the proof herein, with liberty to either party to introduce new and further proof."

The plaintiffs appealed to the court of appeals, stipulating that, if the order appealed from should be affirmed, judgment absolute might be entered against them.

*James C. Carter*, for plaintiffs, appellants;—Cited 1 *Story Eq.* §§ 146, 147, 193 and 185; 2 *Kent Com.* 637, 639; 1 *Pars. on Cont.* 267; Camp v. Pulver, 5 *Barb.* 91.

*William W. Niles*, for defendants, respondents; Cited Johnson v. New York Central R. R. Co., 33 *N. Y.* 610; Bennett *v.*

Judson; 21 *Id.* 238; Hill *v.* Gray, 1 *Stark.* 352; Waldron *v.* Stevens, 12 *Wend.* 100; Elwell *v.* Chamberlain, 2 *Bosw.* 230; Cary *v.* Hotailing, 1 *Hill,* 311; People *v.* Williams, 4 *Id.* 9; Mead *v.* Bunn, 32 *N. Y.* 275; 3 *Phill. on Ev.* 393; Whitney *v.* Allaire, 1 *N. Y.* (1 *Comst.*) 309; Mead *v.* Bunn, 32 *N. Y.* 275; Haight *v.* Hayt, 19 *N. Y.* 564; Elwell *v.* Chamberlain, 2 *Bosw.* 230.

HUNT, J.—We are not at liberty to deny the finding of the referee, that the defendants' indorsement of the note in suit was obtained by the false representation of Odell.

The representations were false, but they are not found to be fraudulent. Whether this question of fraud was one of fact which should be found by the referee, or whether it would be held to be a question of law under Bennett *v.* Judson, 21 *N. Y.* 238, is not, in my view of the case, a material question. Assuming that the transaction was fraudulent, and that the representations were such as might well have deceived a prudent man; assuming, also, that a representation to one partner of what his associate would do, if present, comes within the rule on this subject (as to which see 1 *Story Eq. Jur.* § 199), there is a further difficulty, which cannot be overcome.

This arises from the failure of the defendants promptly to repudiate the indorsement, when informed of the means by which it was obtained. The absent partner returned to his place of business within a few days after the indorsement was obtained, and was informed of the means and representations employed by Mr. Odell to obtain it. Great indignation was expressed by the partners, among themselves, at his conduct.

No disaffirmance, however, of the transaction, no offer to return the money and take back the note, nor even a disapproval or complaint of the means employed, was made to the plaintiffs. The defendants, on the contrary, received and retained the proceeds of the note, and were content to remain as they were, for a period of nearly three months. The insolvency of the maker, at that period, occurred, and for the first time the defendants then communicated to the plaintiffs the complaint that their indorsement had been fraudulently obtained.

This will not do. It is the duty of a party who proposes

Bruce *v.* Davenport.

to disaffirm, as fraudulent, a contract entered into by himself, his partner, or agent, to do it at once, upon the discovery of the fraud.

He must be ready and prompt in such disaffirmance. It will not do to keep the money in his pocket for three months, to deprive the other party of the opportunity of protecting himself, to await the chances of a successful performance of the fraudulent contract, and only to repudiate when the danger of loss becomes imminent.

Neither honesty, good faith, nor the principles of law, will justify such a course.

If the defendants deemed themselves injured by the representations of Mr. Odell, it was their duty, upon the return of the absent partner, when the real facts were made known to all of them, at once to have tendered to the plaintiff, the money received from them, and to have demanded a return of the note.

For illustrations of these principles, see Minturn *v.* Main, 7 *N.Y.* (3 *Seld.*) 220, 227, Saratoga & Schenectady R. R. *v.* Row, 24 *Wend.* 74; Lloyd *v.* Brewster, 4 *Paige,* 537; Conner *v.* Henderson, 15 *Mass.* 319; Cutler *v.* Gilbreth, 53 *Me.* 176.

Upon this ground, I think, the judgment of the referee should be affirmed, and that of the general term reversed.

That portion of the order directing that the testimony already taken might be read in evidence on the new trial was unauthorized and irregular. The new trial, as awarded by the general term, was his right. He was entitied to it, without condition or qualification.

A direction that evidence of a certain character should be admitted was not a legal condition.

All the judges concurred.

Order for new trial reversed, and judgment on the referee's report affirmed with costs.